IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Chaundela Ancrum,<br><br>   Plaintiff,<br><br>vs.<br><br>Universal Protection Security Systems, LP, D/B/A Allied Universal Technology Services, Richard Evans, and Christopher Isgett,<br><br>   Defendants. | Civil Action No.: 2:24-cv-03588-DCN-MGB<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

The Plaintiff above named, complaining of the acts of the above-named Defendant, states as follows:

PARTIES AND JURISDICTION

1. Plaintiff, Chaundela Ancrum ("Ancrum") is a resident and citizen of the County of Charleston, South Carolina.

2. Upon information and belief, Universal Protection Security Systems, LP, D/B/A Allied Universal Technology Services ("Allied") is a limited partnership company incorporated in the state of California. Defendant does business and maintains an office and agents in the State of South Carolina.

3. Upon information and belief, Defendant Christopher Isgett ("Isgett") is a resident of the state of South Carolina.

4. Upon information and belief, Defendant Richard Evans ("Evans") is a resident of the state of Georgia.

5. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331, 42 U.S.C. §2000e ("Title VII") and 42 U.S.C. §1981.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

7. Venue for all causes of action stated herein lies in the District of South Carolina, Charleston Division pursuant to 28 U.S.C. § 1391(b), in that the Plaintiff resides in the district, and Defendant does business in the district.

8. Defendant is an employer with 15 or more employees and otherwise subject to Title VII.

9. Defendant is an employer subject to 42 U.S.C. 1981.

10. Plaintiff timely filed her complaint with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC") alleging discrimination based upon color and race. Plaintiff's charge of discrimination also included an allegation of retaliation.

11. On or about March 22, 2024, Plaintiff received a right to sue notice from the EEOC regarding the complaint described above.

12. That Plaintiff timely filed the foregoing action within ninety (90) days of the date on which she received the notice of right to sue described above.

13. Plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of this action.

14. Plaintiff is a Black American and female.

15. Allied is a private security and staffing company that provides services to organizations including, but not limited to, businesses within the state of South Carolina.

16. On or about December 26, 2021, Plaintiff was hired by Defendant as a Human Resources Coordinator to work in its North Charleston office.

17.Throughout her employment with Allied, Plaintiff reported to, and was supervised by, Isgett, the Director of Operations for Allied.

18.Throughout her employment with Allied, Isgett reported to Evans, the Regional Vice-President for Allied.

19.Throughout her employment with Defendant, Plaintiff met her employer's reasonable expectations and was not issued any written or verbal disciplinary actions.

20.In or about 2021, Plaintiff was provided an online link to Allied's Employee Handbook (the "Handbook").

21.The Handbook provided to Plaintiff did not include a conspicuous disclaimer as outlined in S.C. Code § 41-1-110.

22.The Handbook provided to Plaintiff did not contain a disclaimer underlined in capital letters on the first page of the document.

23.The first page of the Handbook was not signed by Plaintiff.

24.The Handbook included promises that Plaintiff would not tolerate workplace harassment or discrimination based on race, color, or national origin. The Handbook also prohibited discrimination based on race, color, or national origin and promised to investigate any claim of such.

25.Throughout her employment with Defendant, Plaintiff reported instances of race discrimination she experienced by Allied.

26. In June 2022, Plaintiff learned that a Human Resources Coordinator who is Caucasian-American and hired after Plaintiff was being paid at a higher rate than Plaintiff.

27.In June 2022, Plaintiff made a complaint her pay was less than other non-black employees who held the same position as Plaintiff.

28. Subsequently, Plaintiff learned another Caucasian-American employee who served as a receptionist was being paid at a higher rate than Plaintiff.

29. Plaintiff again complained that her pay was less than other non-black employees.

30. Defendants did not take Plaintiff's complaint seriously and refused to investigate her complaints pursuant to its policies.

31. Instead of investigating Plaintiff's complaint, Isgett told Plaintiff that she was going to get a $5/hr. raise on or around December 2022. However, Plaintiff did not receive this raise. Instead, a newly hired HR coordinator received pay that was higher than Plaintiff's.

32. Instead of investigating Plaintiff's complaint of discrimination, Plaintiff was told by Evans she needed to "suck it up."

33. After Plaintiff made complaints of race-based discrimination, Plaintiff was informed she was no longer eligible for overtime work. Plaintiff explained to Allied that she felt she was being forced out and could not continue to work if she was not able to supplement her lower pay with overtime work.

34. Other non-black employees and employees who did not make complaints of discrimination were allowed to work overtime hours.

35. Because of her the discriminatory and retaliatory treatment, Plaintiff was forced to resign her employment with Allied.

36. In June 2023, Plaintiff submitted her two weeks' notice and informed her employer she would resign her employment.

37. Subsequent to providing her two weeks' notice, Plaintiff trained the person who was hired to replace her as the Human Resources Coordinator and learned that the employee Plaintiff was training to replace her was being paid more than Plaintiff.

38. Plaintiff again complained about how non-black employees were being paid more than her, including the Caucasian-American employee she was training.

39. Had Defendant Paid Plaintiff the wages being paid to other Caucasian-American employees, she would have remained employed with Allied.

FOR A FIRST CAUSE OF ACTION:
VIOLATION OF TITLE VII
DISCRIMINATION BASED ON RACE/COLOR
(As to Defendant Allied)

40. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

41. Plaintiff, as an African-American, is a member of a protected class under Title VII.

42. Throughout her employment with Defendant, Plaintiff was performing her job satisfactorily.

43. Plaintiff was subjected to adverse employment actions by her employer and agents of her employer including, but not limited to, being paid less because of her race, being restricted from working overtime hours, and being constructively discharged from her employment with Defendant.

44. Plaintiff's treatment was different from similarly situated employees outside her protected class. By way of example, Plaintiff's pay was less than other Caucasian-American employees and was not allowed to work overtime hours when other Caucasian-American employees were allowed to do so.

45. There is additional evidence that gives rise to an inference of unlawful race-based discrimination to include, but not limited to Plaintiff's supervisors making comments that she, as a black person, should "suck it up and work" when she made complaints about race discrimination.

46. Defendant's behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff emotional, psychological, and physical harm.

47. That as a result of the above, Plaintiff has suffered damages in the form of lost back wages, expenses associated with finding other work, and has suffered emotional and psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

48. That the Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from the Defendant.

FOR A SECOND CAUSE OF ACTION:
VIOLATION OF TITLE VII
RETALIATION
(As to Defendant Allied)

49. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

50. That as alleged above, Plaintiff complained to Defendant on several occasions that she was being discriminated against based on her race.

51. That Plaintiff's complaints were made in good faith, and constitute protected activity under Title VII.

52. Defendant's actions as alleged above created a work environment that a reasonable person would find to be harassing, hostile, and abusive.

53. Plaintiff, on numerous occasions, complained to Defendant about the above-described race-based discrimination and Defendant was on notice that it was occurring.

54. Despite being notified of the above-mentioned conduct, Defendant wholly failed to take prompt and effective remedial action to end the illegal conduct and Defendant, and, in retaliation for making complaints of discrimination, Defendant continued to subject Plaintiff to race-based discrimination in violation of Title VII.

55. Subsequent to and in retaliation for Plaintiff making complaints, Defendant created and allowed the work environment to be so hostile that no person could have withstood such treatment.

56. To further retaliate against Plaintiff, Defendants refused to properly pay Plaintiff and removed Plaintiff's ability to work overtime hours.

57. That as a result of the above, Plaintiff has suffered damages in the form of lost back wages, income and benefits, expenses associated with finding other work, and has suffered emotional and psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

58. Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff, and therefore Plaintiff is entitled to recover punitive damages from the Defendants.

FOR A FOURTH CAUSE OF ACTION:
VIOLATION OF 42 U.S.C. 1981
RACE DISCRIMINATION
(As to all Defendants)

59. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

60. Plaintiff is a black American.

61. Throughout her employment with Defendant, Plaintiff was performing her job satisfactorily.

62. Plaintiff was subjected to adverse employment actions by her employer and agents of her employer including, but not limited to, being paid less because of her race, being restricted from working overtime hours, and being constructively discharged from her employment with Defendant.

63. Plaintiff's treatment was different from similarly situated employees outside her protected class. By way of example, Plaintiff's pay was less than other Caucasian-American employees and was not allowed to work overtime hours when other Caucasian-American employees were allowed to do so.

64. There is additional evidence that gives rise to an inference of unlawful race-based discrimination to include, but is not limited to, Plaintiff's supervisors making comments that she, as a black person, should "suck it up and work" when she made complaints about race discrimination.

65. Defendant's behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff emotional, psychological, and physical harm.

66. That as a result of the above, Plaintiff has suffered damages in the form of lost back wages, expenses associated with finding other work, and has suffered emotional and psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

67. That the Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from the Defendant.

68. Defendants' behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff emotional and psychological and physical harm.

69. Plaintiff, on numerous occasions, complained to Defendants about the above-described race discrimination and Defendants were on notice that it was occurring.

70. Despite being notified of the above-mentioned conduct, Defendants wholly failed to take prompt and effective remedial action to end the illegal conduct and Defendant continued to subject Plaintiff to race discrimination in violation of 42 U.S.C. 1981.

71. But for Plaintiff's race, Defendants would have properly investigated Plaintiff's complaints and would have paid Plaintiff appropriately.

72. But for Plaintiff's race, Defendants would not have discriminated against Plaintiff.

73. But for Plaintiff's race, Defendants would have paid Plaintiff a wage to that of her Caucasian-American coworkers.

74. But for Plaintiff's race, Defendants would not have engaged in conduct that caused Plaintiff to resign her employment.

75. Plaintiff was discriminated against in violation of 42 U.S.C. 1981.

76. As a result of Defendants' actions, Plaintiff has suffered damages in the form of lost back wages, income and benefits, expenses associated with finding other work, and has suffered psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing,

character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

77. Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and she is entitled to recover punitive damages from Defendant.

FOR A FIFTH CAUSE OF ACTION:
VIOLATION OF 42 U.S.C. 1981
RETALIATION
(As to all Defendants)

78. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

79. That as alleged above, Plaintiff complained to Defendant on several occasions that she was being discriminated against because of her race.

80. That Plaintiff's complaints were made in good faith, and constitute protected activity under 42 U.S.C. 1981.

81. Subsequent to and in retaliation for Plaintiff making complaints, Defendants created and allowed the work environment to be so hostile in order to prevent Plaintiff from engaging in protected activity.

82. Plaintiff, on numerous occasions, complained to Defendant about the above-described race-based discrimination and Defendant was on notice that it was occurring.

83. Despite being notified of the above-mentioned conduct, Defendant wholly failed to take prompt and effective remedial action to end the illegal conduct and Defendant, and, in retaliation for making complaints of discrimination, Defendant continued to subject Plaintiff to race-based discrimination in violation of 42 U.S.C. 1981.

84. Subsequent to and in retaliation for Plaintiff making complaints, Defendant created and allowed the work environment to be so hostile that no person could have withstood such treatment.

85. To further retaliate against Plaintiff, Defendants refused to pay Plaintiff similar to her Caucasian-American coworkers and removed Plaintiff's ability to work overtime hours.

86. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

87. Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff, and therefore Plaintiff is entitled to recover punitive damages from the Defendants.

FOR A SIXTH CAUSE OF ACTION:
CIVIL CONSPIRACY
(Against all Defendants)

88. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

89. Defendants Allied, Evans, and Isgett conspired with each other, their agents, and other persons to injure the Plaintiff. These acts include, but are not limited to, conspiring with others to discriminate against Plaintiff, and attempt to force Plaintiff to resign from her employment because Plaintiff is a black American and made complaints about discrimination.

90.     Defendants Allied, Evans, and Isgett further conspired with each other, their agents, and other persons, including non-employee applicants, to take Plaintiff's position by refusing to pay her as Defendant paid other Caucasian-American employees.

91.     The acts of Defendants and their conspirators were undertaken for the specific intentional, conscious, and deliberate purpose of harming Plaintiff. Specifically, Defendants, conspired to consciously, deliberately, and intentionally refused to pay her as Allied paid other Caucasian-American employees and restrict her ability to work overtime hours in an effort to force Plaintiff to resign.

92.     As a result of Defendants' actions, Plaintiff has suffered damages in the form of lost back wages, income and benefits, expenses associated with finding other work, and has suffered psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

93.     Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, and maliciously.  Therefore, Plaintiff is entitled to recover punitive damages from Defendants.

FOR A SEVENTH CAUSE OF ACTION
BREACH OF CONTRACT
(As to Defendant Allied)

94.     Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

95.     During the relevant time period (December 2021 to June 2023), Defendant was an employee of Allied.

96. Defendant Allied publishes and maintains an Employee Handbook, which assures employees of their right to report harassment and bullying and also contains anti-discrimination, harassment, and retaliation clauses.

97. Defendant Allied further states, in its Employee Handbook, that it is an equal opportunity employer, when it declares that there will be no discrimination as to race, color, or national origin. Defendant Allied further states, in its Handbook, that it will comply with the requirements of the law in implementing equal employment decisions.

98. Defendant Allied's Handbook further states all forms of harassment are strictly prohibited and will not be tolerated.

99. The Handbook's anti-discrimination, harassment, and retaliation provisions and Equal opportunity employment provisions are definitive in nature and promise specific treatment including promptly and thoroughly investigating any claim of discrimination and harassment. Further, the handbook promises the specific treatment in these specific situations that Defendant Allied will follow up as necessary to ensure no retaliation for making a complaint or cooperating with an investigation occurs.

100. The Handbook memorialized an employment contract between Plaintiff and Defendant Allied.

101. Plaintiff and Defendant Allied entered into a binding and valid contract whereby Plaintiff relied on Defendant Allied, through its agents, reassurance that, pursuant to the Handbook and the promises made therein, Defendant Allied would enforce its the anti-discrimination, harassment, and retaliation policies. Plaintiff also relied on the Defendant's reassurance that it will follow its Equal Employment Opportunity policy with respect to its employees, including how employees are paid.

102. Plaintiff agreed to fulfill the duties of his position with Defendant Allied in exchange for valuable consideration and salary and the promises contained in the Handbook.

103. Defendant Allied, through its agents, unjustifiably failed to perform its promised duties by failing to follow the terms of the Handbook with regard to its anti-discrimination, harassment, and retaliation policies or its Equal Employment Opportunity policy.

104. Specifically, Defendant Allied intentionally and willfully allowed Plaintiff to be subjected to discrimination and retaliation. Moreover, Defendant Allied intentionally and willfully excluded Plaintiff from working overtime hours based on her race.

105. Defendant Allied's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

106. As a direct and proximate result of the actions of Defendant Allied, Plaintiff sustained damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

WHEREFORE, Plaintiff requests a jury trial on all causes of action and prays for the following relief against Defendants: for such amount of actual and special damages as the trier of fact may find, (including lost back wages, income and benefits, expenses associated with finding other work, psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), punitive damages, the cost

and disbursements of this action, including reasonable attorneys' fees, prejudgment interest and for such other and further relief as the court deems just and proper.

>RESPECTFULLY SUBMITTED,
>
>FERGUSON LAW AND MEDIATION, LLC
>
>s/*Emmanuel J. Ferguson, Sr.*
>Emmanuel J. Ferguson, Sr.
>Federal Bar #11941
>171 Church Street, Suite 160
>Charleston, South Carolina 29401
>(843) 491-4890  telephone
>emmanuel@fergusonlaborlaw.com
>
>*Attorney for Plaintiff*

June 19, 2024
Charleston, South Carolina